Good morning, your honors, or afternoon, depending on your time zone. I'm Assistant United States Attorney for the Eastern District of Washington, Richard Burson, representing the United States as appellant in this case. I will be reserving two minutes of this time for rebuttal if it pleases the court. Turning to argument, may it please the court. Does the absence of date and its lawful authority to hear a removal case, lawful authority granted to it in the INA, the Immigration and Nationality Act by Congress, in pretty clear, unequivocal, and broad terms, to conduct proceedings, quote, to determine the inadmissibility or deportability of aliens? And according to the district court below in this case, and the three subsequent cases we'll be talking about, the answer to that question is yes. And the United States is here today because the district court was incorrect in that finding. Turning to the case of Mr. Bastide-Hernandez, specifically in the court's order in that case, as we stand here today having the benefit of Karen Giffey v. Whitaker decided by this court and Aguilar-Furman decided by this court, we know that the rationale that undermines the district court's conclusion in that case is irreconcilable with what is now the law in this circuit and every circuit to have addressed the issue, which is, does the statute in the INA cited by the district actually affect jurisdiction? And we know that answer, as held by this court, is no. That particular statute within the Immigration and Nationality Act has nothing to do with, quote, the immigration court's jurisdiction or authority to hear the case. So, counsel, it's the government's position that once the NTA is filed, there is jurisdiction. And whatever other arguments a defendant in a criminal case may have, the argument that there is no is completely foreclosed. That's correct, Your Honor, because as we, opposed to Aguilar-Furman, we look to the regulations. But let's say that don't we have to deal with the issue of whether the failure to include the location and time and so on in the NTA, that it has to be provided at a later point. In this particular case, we have a situation where the information was provided in an unusual way and presumably not in accordance with 8 CFR 1003.32. So, my question to you is if something, if you will, the missing link in the NTA by the NOH, but it's delivered by facts and may or may do for the idea that there is jurisdiction. Well, firstly, Your Honor, the government's position here, I think, is a reasonable reading of the regulations at issue, which is that in order to vest jurisdiction, the charging document is filed with the court regardless of whether date or time is not included. And that moment is when jurisdiction vests because if we're going to look at the regulation, we still have to ask when it is that jurisdiction vests in the immigration court. If you look at our case, Karen Githy indicates that it vests provided that the information that's missing is provided at a later point, right? That was the language of Karen Githy, Your Honor. But Karen Githy, the court there expressly at the end of the opinion, did not decide what would happen had a hearing notice not been received in that case. And so, that's an open question before this court today. That's what we're doing today. My question to you is since the NOH did not get delivered, the petitioner in this case and the way provides, what, if anything, does that do to the jurisdictional question? It does nothing as far as the immigration court's lawful authority or jurisdiction to hear the cases. As I was discussing earlier, we have to put a pin at what point in time does jurisdiction vests. And here, if we're to read the regulation as requiring the service of a hearing notice before jurisdiction vests, even assuming that the regulation is not a claim processing rule, which is the primary argument of the government here, then we would have the regulation mandating that the immigration court docket, schedule, and prepare and send a hearing notice for a case in which it had not yet acquired subject matter jurisdiction. But that really brings us... Or you would have to say, in some way, it lost jurisdiction at the point of the NOH or tried to go forward with the hearing where they had not cured. That would be another way of thinking about it. I'm not saying it's necessarily the right way, but that would be a way of saying that. Because I recognize what you're saying. Is it very odd to say you got jurisdiction on day one because of something you did on day 10, which is sort of the way Karen Gethy reads, isn't it? Again, respectfully, I think Karen Gethy leaves open the question of what is the effect on subject matter jurisdiction if a hearing notice is not served on the respondent in removal proceedings. And the government's answer to that question is none because jurisdiction indeed vested when the charging document was filed. So you're ignoring the president's comment about the necessity of it being provided later on. I think the Karen Gethy court did find it important that the hearing notice was served later on because it allowed the court to answer the question without addressing the follow-up question, which is, well, what if hearing notice hadn't been decided? It allowed the court to decide the issue without addressing that question. And indeed, that's what the court did. And they expressly did so when they said, we do not today decide what happens if the hearing notice is not served. Let me give you this illustration. Let's assume that in this case that Bastida Hernandez gets the NTA, doesn't have the information on it, and he never, ever gets the NOHA. They just come in and grab him out of his cell and bring him to a hearing. He gets none of that. Does the court have jurisdiction there? Does the IJ have jurisdiction? It does, your honor. The court would have jurisdiction over the proceeding and the court would be responsible for providing a remedy to what at that point would arguably be some sort of procedural violation. The remedy, presumably, and actually in immigration court would be for the immigration judge to offer a continuance after informing the respondent of his rights to the respondent. And we don't have the statistics in the record before us, but I can say it would be highly unusual for an immigration judge in a pro se removal hearing to not have to find counsel or prepare for the hearing without even being asked by the respondent. So that would be the remedy for a missing hearing notice. Not to reach into what is otherwise the tribunal's lawful authority to hear a case granted to it by Congress and then tell that tribunal, well, you never had jurisdiction over this person in the first place. Which does bring me to the fact of this case regarding the hearing notices. If this court were to determine that a hearing notice were required to, for lack of a better word, perfect subject matter jurisdiction, this court would then have to look at the facts of this case and decide whether the defendant here had proved that he didn't receive the hearing notice or even what the evidence suggests. And here we have a hearing notice that indicates that court staff with the immigration court faxed it to a detention center where a custodial officer was tasked with personally serving it on the defendant here. That's the only reasonable way to read the Certificate of Service in this case. Presumably the alien in these proceedings did not have a fax machine in his cell. So there would have been an intervening agent who personally served the hearing notice. What you call the Certificate of Service was something written by the person who sent the fax, am I right? Not someone who got the fax. That's correct, Your Honor. The Certificate of Service indicates court staff faxed it to the detention center for the defendant. I want to take you back to your part about what's the remedy, because I'll ask your adversary as well. As I understand it, in this case, as opposed to some of the others, he doesn't even concede that he appeared at the hearing. What is the remedy there? Is that where we get to the 1326 attack? Because you have another line of defense, which seems to no matter how badly you were treated, if you didn't jump through the right hoops, you have no defense. Can you go there with me? I can, Your Honor. And it's important to note here that the defendant did not concede that he was at his removal hearing, although he hasn't disputed that fact either. And the removal order in this case says that it was based on the admissions and concessions of the defendant. And it also indicates the defendant waived appeal. So although we don't have an audio recording of the immigration hearing in this matter... Since you mentioned the waived appeal, and this will come up in another place, it may just be a typographical glitch, but your brief says the defendant waived appeal, and you cite ER 27 and 28. Those are the removal warrants themselves, and I see nothing about waiver there. At the bottom of 26, I see a little tiny box that says no appeal A, I, B, and B is circled. Is that what you're relying on? That's what I'm relying on, Your Honor, even if it is the case that there's a typographical error in the brief. It's that immigration judge's order indicates that both parties, that's what the circled B indicates, waived appeal of his order in this matter. All right, but so the only concession or waiver we have is this circle by the IJ. That's correct, Your Honor. Okay. Now you've... I could not pass your time. Let's hear from the other side, and then we'll see whether we need more time. In this case, you're going to have other cases you can take care of some of this on. So Mr. Shelton, let's hear from you, please. Thank you, Your Honors. Paul Shelton, counsel for Mr. Bastide Hernandez, the appellee in 19-3006. Your Honors, I want to start with what Judge Boggs was mentioning at the end of Mr. Burson's initial statements. To be clear, there is no dispute factually that Mr. Bastide Hernandez was at his removal hearing. We're not arguing that it was an in-absentia removal. However, we don't know what occurred at that hearing other than what is in that one-page removal order, because Mr. Bastide Hernandez did not have any significant recollection of his hearing. He did not submit a declaration in this case, and we don't have the recording, which was requested but never produced in discovery. So we don't know substantively what happened, what questions the judge may or may not have asked, what statements Mr. Bastide Hernandez may or may not have made, because all we have is that one-page removal order. But we're not contesting that he was present at the hearing. We do, however, contest that he received the notice of hearing. So to get to Judge Smith's hypothetical about what if a notice of hearing was never received, we believe that there's factual evidence in the record that the notice of hearing was not received. We believe that because it was not received, to use the term Judge Boggs used, the court lost jurisdiction, because it is weird in a way to say the court never had jurisdiction when it took some actions, but I think lost is a good way to look at it. So counsel, so your view is that the court had jurisdiction when the NTA was filed, and that some collection of events that happened after that were jurisdiction stripping events, essentially nunk-pro-tunk? I think that's the way we have to look at it in light of Kerengethian-Fermin. I think 1229 ought to control, but obviously this court has spoken to that. So I think under Kerengethian-Fermin, we do have a scenario where a notice to appear is filed, which does initiate removal proceedings, but then if subsequent steps are not taken, specifically if a curative notice of hearing is not served, that it does effectively retroactively strip the immigration court of jurisdiction. So counsel, I mean, even if that were somehow correct, and I have a lot of trouble with that argument, if you concede that, as I agree you must, that there was initially jurisdiction, why don't you have to meet 1326D? I mean, in your brief you say you don't have to meet 1326D, and you don't even try to. So even if you're correct that there was jurisdiction, and then there wasn't jurisdiction, why wouldn't 1326D apply to you, and why wouldn't you simply lose here because you make no attempt to show how 1326 works in your favor? Your honor, specifically as to 1326D, if my memory is correct, the district judge actually did address that in his order here. I think even if D must be met, that D is met anytime there's a lack of jurisdiction, because a removal order entered without subject matter jurisdiction is inherently fundamentally unfair. But counsel, your brief says Mr. Bastide Hernandez did not need to satisfy the requirements of 1326D because the immigration court lacked jurisdiction, and even if that weren't a waiver, I don't see what would be fundamentally unfair about, he's there at a hearing, Congress has made it clear in 1326D that there can't be a collateral attack without one, two, or three. So even if somehow you're technically correct that there was some jurisdiction stripping, I don't understand how we can ignore 1326D. Your honor, the reason I briefed is my argument is that the lack of jurisdiction moots 1326D, that defendants do not have to meet D when there's a lack of jurisdiction. What I'm arguing in response to your question is if this court finds they do have to meet D, I believe the lack of jurisdiction meets that requirement because an order entered without jurisdiction is fundamentally unfair. So my argument is that D does not apply. If this court disagrees, I believe we meet D because of the lack of jurisdiction. But fundamentally unfair by itself isn't enough. Don't you need one, two, and three? You do, and I think the reason one and two are satisfied is if the court's order was entered without jurisdiction, there is no administrative process and no judicial review because there's not a valid order to remove from. As the government argued essentially in opposition after Pereira was decided, if jurisdiction was an issue, the Supreme Court should never have decided Pereira. So that's inherent. If the order was not entered with jurisdiction, there is no legitimate appeals process to take. So that's why one and two are satisfied. I can't recall specifically if that's in the district court's order in this case or one of the other, but the district court does address the 1326D analysis and says even if a non-citizen has to meet D, they do because there's no satisfaction of one or two because it's entered without jurisdiction and an order without I understand that line of argument, but if we hold with the government side that jurisdiction attaches and that's it, do you have any fallback in terms of any way of attacking things that are quite unfair? At the extreme would be something that really was in absentia. For example, is the waiver valid? Was there really a waiver? Do you have an avenue to raise those? Because there are cases that say if you weren't informed of your right to appeal, then you do meet one and two. Is that a fair reading? It is a fair reading, your honor. In response to do we have that based on the record before us, the short answer is no because we did not have the actual recording of the removal hearing. We don't have a number of what would be normal due process arguments to make in the event the court decides that the government must prevail in this appeal. I think the appropriate course of action would be to remand for further evidentiary issues because I do believe we would want to make additional due process arguments as we have done in Del Carmen Barco, which we'll argue later this morning. If we uphold the appeal, it doesn't create a conviction. We've got to remand in any event, don't we? That's correct, your honor. Let me ask you this, just to follow up on some of the earlier dialogue. It sounds like you are agreeing with the government and perhaps some of my colleagues that what happened here was when the NTA was filed, that IJ had jurisdiction, but lost jurisdiction when the NOH was not properly served or do it is the better understanding that it didn't require jurisdiction at all until the NOH was properly served, which is it? Your honor, we've argued in our briefing and our position is the latter, that jurisdiction never vests at all when the government doesn't take these steps. I think the lost jurisdiction analysis is simply a better colloquial way to understand it because it quite frankly is odd to say that the court never had jurisdiction when it issued the notice of hearing. I mean, it's taking action, it's doing things, but I think the official position of the appellee here is jurisdiction at all because the NTA was defective and our position is a defective NTA is not sufficient to vest with jurisdiction under the regulation and those defects are never cured. So our argument is that it never vests at all in a kind of colloquial sense, the losing just makes it easier to understand practically what happened. Your answer to the 1326d argument is that if this is void ab initio because it's ultra virus, you don't have to worry about that, you don't have to satisfy that, is that correct? Yes, your honor, it is. Judge Bennett, did you have a question? Yeah, so how do you and Rosales Vargas, which came, of course, after Karen Githy, so doesn't that additionally foreclose your jurisdiction argument and talks about all of these things as at best claim processing rules? If this court were bound by that, it would, your honor, but no, this court is not. This court said in Karen Githy the regulations control was when jurisdiction vests. In Aguilar Fermin, which came after Rosales Vargas, this court cited that favorably and said, yes, what we said in Karen Githy still holds the regulations control. The only thing that Aguilar Fermin deferred to the BIA ruling and Rosales Vargas was to say that the address of the immigration court need not be included in the notice to appear so long as it is provided in a subsequent notice. They did not defer to the BIA's ruling about a claims process rule because that would have reversed Karen Githy, which it clearly did not do. Karen Githy and Fermin still bind this court. Was Karen Githy's decided correctly? I know we're bound by it, but was it decided correctly? In my opinion, no, your honor. I believe eight United States Code 1229 controls jurisdiction. We've submitted supplemental briefing as to at least one argument why that's the case, but I recognize that this panel at least is bound by Karen Githy, but no, I don't believe it was decided correctly. Okay. Unless your honors have any other questions, I will. Colleagues on this case. Okay. Mr. Burson, is there anything further you need to say on this or is it something you can handle in the next case? We can't hear you. We can move on to the next case, your honor. Okay. Very well. Okay. The case just argued United States versus Bastida Hernandez is submitted. We'll now hear argument in the case of the United States versus Del Carmen Abarca. And in that case, again, it's the government that is the appellate. So please proceed.
judges: Boggs, M. Smith, Bennett